UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOSEPH V. FOSTER, JR. (#75808)                CIVIL ACTION

VERSUS

WILLIE GRAVES, ET AL.                          NO. 09-0657-JJB-CN

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, August 10, 2010.

_____

**MAGISTRATE JUDGE CHRISTINE NOLAND**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**JOSEPH V. FOSTER, JR. (#75808)**                                    **CIVIL ACTION**

**VERSUS**

**WILLIE GRAVES, ET AL.**                                              **NO. 09-0657-JJB-CN**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the Motions to Dismiss of defendants Willie Graves, Thomas Sullivan and Scott Perrilloux, rec.doc.nos. 25, 26, 27 and 29.[1]  These motions are opposed.

The pro se plaintiff, an inmate incarcerated at Elayn Hunt Correctional Center ("EHCC"), St. Gabriel, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Livingston Parish Sheriff Willie Graves, former Sheriff Odom Graves, Livingston City Chief of Police Gary Stewart, former Chief of Police Ted Weibbler, Livingston Parish District Attorney Scott Perrilloux, former District Attorney Duncan Kemp, Livingston Parish Clerk of Court Thomas Sullivan, former Clerk of Court Lucius Patterson, and Livingston Parish Sheriff's Detectives Pat Haley, Donald Cowart and Ed Jeansonne, complaining that his constitutional rights have been violated by the defendants' failure to return property seized from him in 1983.[2]

---

[1]  In the original Motion to Dismiss filed on behalf of Defendant Scott Perrilloux, rec.doc.no. 27, the pleading erroneously stated therein that the office of defendant Perrilloux was appearing as attorney on behalf of defendant Willie Graves instead of appearing on behalf of defendant Perrilloux himself. This error has been corrected in the Amended Motion to Dismiss filed by defendant Perrilloux, rec.doc.no. 29.

[2]  Attempts by the United States Marshal's Office to serve defendants Odom Graves, Donald Cowart, Ed Jeansonne, Pat Haley, Lucius Patterson, Duncan Kemp, Gary Stewart and Ted Weibbler have proven unsuccessful because service of process has not been accepted on behalf of these defendants at their respective places of employment. Specifically, defendants Graves, Cowart, Jeansonne and Kemp are no longer employed at these locations, and defendants

A claim is subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure if a plaintiff fails "to state a claim upon which relief can be granted." In Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and more recently, in Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6). The Court noted that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests[.]'" Bell Atl. Corp. v. Twombly, supra, quoting Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). See also Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Notwithstanding, although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish "more than labels and conclusions" or the "formulaic recitation of the elements of a cause of action" in order to provide the "grounds" of "entitle[ment] to relief." Bell Atl. Corp. v. Twombly, supra. See also Papasan v. Allain, 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). The Court stated that there is no "probability requirement at the pleading stage," Bell Atl. Corp. v. Twombly, supra, but "something beyond ... mere possibility

---

Haley and Patterson are deceased. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff to serve a defendant within 120 days of commencement of an action is cause for dismissal of the defendant from the proceedings. It is appropriate, therefore, that the plaintiff's claims asserted against defendants Odom Graves, Donald Cowart, Ed Jeansonne, Pat Haley, Lucius Patterson, Duncan Kemp, Gary Stewart and Ted Weibbler be dismissed, without prejudice, for failure of the plaintiff to timely effect service on these defendants.

... must be alleged." Id.  The facts alleged in the Complaint "must be enough to raise a right to relief above the speculative level," or must be sufficient "to state a claim for relief that is plausible on its face," Id. (abandoning the "no set of facts" language set forth in Conley v. Gibson, supra).  A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, supra.  Where a Complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." Id.

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." Erickson v. Pardus, supra.  See also Bell Atl. Corp. v. Twombly, supra.  Further, "[a] document filed pro se is to be liberally construed ... and a pro se Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, supra (citations omitted).

In his Complaint, the plaintiff alleges that he was arrested in Livingston Parish in November, 1983, on multiple criminal charges and, in connection with his arrest, numerous search warrants were executed at different locations by defendants Haley, Cowart and Jeansonne, resulting in the seizure of a large amount of the plaintiff's personal property, allegedly including but in no wise limited to 3 automobiles, 2 boats, approximately 100 firearms, a large quantity of ammunition, 6 dogs and assorted tools, furniture, appliances, electronics and household furnishings.  The plaintiff was thereafter tried and convicted on a single count of burglary of a pharmacy in August, 1985.  According to the defendants, the only tangible evidence introduced at the plaintiff's

trial in 1985 was a piece of plywood and a drill. On appeal to the Louisiana Court of Appeal for the First Circuit, this conviction was affirmed, and the plaintiff's subsequent application for supervisory review in the Louisiana Supreme Court was denied on January 30, 2004.

In May, 2003, prior to denial of his writ application in the Louisiana Supreme Court relative to his criminal appeal, the plaintiff filed a motion for return of the seized property which had not been utilized as evidence in his criminal trial pursuant to La. R.S. 15:41. In response, the defendants filed exceptions of prescription which were ultimately granted by the trial court on September 10, 2008, upon a finding that the plaintiff's claim was time-barred. The plaintiff appealed this determination to the intermediate appellate court, which affirmed the lower court's ruling on June 12, 2009, and the plaintiff's subsequent application for supervisory review before the Louisiana Supreme Court was denied on October 30, 2009.

In the instant civil rights action, the plaintiff now complains that the application of La. R.S. 15:41, and the jurisprudence thereunder, has resulted in effectively depriving him of his property without due process of law and has denied him a meaningful post-seizure remedy in connection with the wrongful taking of his property. This statute provides for the disposition of property seized in connection with criminal proceedings where the property is not thereafter used as evidence or is no longer needed as evidence. At the time of seizure of the plaintiff's property, La. R.S. 15:41 provided that, in such event, the property "shall be returned to the owner", La. R.S. 15:41B(1), or "if the owner ... does not claim it within two years after its seizure," the court shall order a sale of the property at a public sale or auction or may order the property destroyed, transferred to a public or nonprofit institution, or may make such other order as the court deems appropriate. La. R.S.

15:41B(2)(a) and (b).³  This statute, together with La. Code of Criminal Procedure article 167, envision that seized property shall be "retained under the direction of the judge" and that a judicial order shall be required in order for the property to be disposed of if it is not returned to the owner.  In addition, Louisiana jurisprudence establishes that seized property may be retained by state officials so long as there remains a possibility of appeal or of state or federal post-conviction relief because, "[i]n either event the evidence would be needed on review and in any new trial which might be required."  State v. Feeback, 434 So.2d 466 (La. App. 2d Cir. 1983).  The Feeback case suggests, however, that there should be some connexity between the seized property and the criminal offense(s) charged.

In the instant case, it appears that no judicial order has ever been entered relative to disposition of the plaintiff's property.  It further appears that, inasmuch as the defendants assert that the only items of tangible property introduced at the plaintiff's criminal trial were a piece of plywood and a drill, the bulk of the property seized from the plaintiff likely has no actual connexity to the criminal offenses charged against him.

In their motions to dismiss, the defendants first contend that, as found by the state trial court, this Court should conclude that the plaintiff's claim is barred by the one-year limitations period applicable to the Louisiana state law claim of conversion of property.  This Court concludes, however, that it is unable to make this determination on the record before it.  To the contrary, the reported decisions of the Louisiana Courts of Appeals have uniformly concluded that the two-year period provided in former La. R.S. 15:41 does not set a definitive date

---

³  The statute was amended in 1999 to change the applicable time period from two years to six months.

after which a claimant has lost his right to seek return of his property, but rather is a minimum period of time which must elapse before the State may seek to dispose of the property in accordance with the procedures set forth in the statute.  See Taiae v. City of Baton Rouge, 808 So.2d 677 (La. App. 1st Cir. 2001) ("The two-year time period referenced in former La. R.S. 15:41(B)(2) is a minimum period before which a court may not act to dispose of seized property.  It does not set an outside time limit within which an owner of noncontraband property must assert a claim for the property's return.").  See also Brown v. Neustrom, 916 So.2d 395 (La. App. 3d Cir. 2005)(same); State v. Baynes, 678 So.2d 959 (La. App. 4th Cir. 1996), overruled on other grounds, In re Matter Under Investigation, 15 So.3d 972 (La. 2009)(same).  As such, the Louisiana courts have allowed proceedings for the return of seized property to be instituted more than two years after the seizure.  Taiae v. City of Baton Rouge, supra (5 years after seizure); Brown v. Neustrom, supra (3 years after seizure); State v. Baynes, supra (7 years after seizure).  See also Owens v. Book, 809 So.2d 1217 (La. App. 3d Cir. 2002) (motion to release evidence allowed 10 years after seizure).  This has been the result even where no criminal charges were ever pursued against the claimant after the seizure was made.  See Taiae v. City of Baton Rouge, supra ("Taiae was never charged with any crime."); Owens v. Book, supra ("[N]o action was taken against [arrestee] ....").  In addition, the Louisiana courts have similarly concluded, in the alternative, that interpreting the claimants' proceedings as actions in the nature of claims for conversion, the claims were not time-barred under the one-year limitations period applicable to such claims because, so long as the property was being held by state officials in connection with ongoing criminal investigations or prosecutions, the owners had no reason to know that the State's possession of their seized property was adverse to their ownership interests.  See Taiae v. City of Baton Rouge, supra ("[T]here is no

evidence in the record demonstrating when the defendants' possession of the seized money became adverse to Mr. Taiae's possession.  Further, there is no evidence that Mr. Taiae had knowledge of the adverse possession of his property....  Without this evidence, the date upon which the one-year prescriptive period would have begun cannot be determined.").  See also Owens v. Book, supra (same); Dillon v. City of New Orleans, 534 So.2d 1373 (La. App. 4th Cir. 1988) (same).

In the instant case, there is no evidence before the Court to suggest that any order has ever been entered by a state court judge disposing of the plaintiff's seized property pursuant to La. R.S. 15:41.  Accordingly, the plaintiff's claim for return of his property does not seem to be foreclosed by operation of the time limitation contained in that statute.  Further, there is no evidence before the Court which reflects the date upon which the State's possession of the plaintiff's property became adverse to his ownership interest or the date upon which the plaintiff became aware of such adverse possession so as to establish the date of accrual of his cause of action.  Although this Court applies the applicable limitations period of the forum state, Owens v. Okure, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), federal law determines when the plaintiff's cause of action accrues, Gartrell v. Gaylor, 981 F.2d 254 (5th Cir. 1993), and such accrual occurs only when the plaintiff knows of or should know of his loss attributable to the defendants' wrongful conduct.  Id.  In the absence of this information, the Court is unable to find that the plaintiff's claim is in fact time-barred.

Notwithstanding the foregoing, the Court concludes that the defendants' next contention, that the plaintiff's claim is foreclosed by the Rooker-Feldman doctrine, is meritorious.  See Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and District Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75

L.Ed.2d 206 (1983).  The Rooker-Feldman doctrine imposes a jurisdictional limitation on federal court action and prohibits a federal district court from entertaining a collateral attack upon a state court judgment.  As the United States Court of Appeals for the Fifth Circuit has explained, "[t]he Supreme Court has definitively established, in what has become known as the Rooker-Feldman doctrine, that 'federal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts.'"  Weekly v. Morrow, 204 F.3d 613 (5th Cir. 2000), citing Liedtke v. State Bar of Texas, 18 F.3d 315 (5th Cir.), cert. denied, 513 U.S. 906, 115 S.Ct. 271, 130 L.Ed.2d 189 (1994).  "If a state trial court errs the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court.  Thereafter, recourse at the federal level is limited solely to an application for a writ of certiorari to the United States Supreme Court."  Id.  "This jurisdictional bar is not limited to actions in federal court that explicitly seek review of a state court decision, but also extends to those in which the constitutional claims presented ... are inextricably intertwined with the state court's grant or denial of relief."  Hale v. Harney, 786 F.2d 688 (5th Cir. 1986) (emphasis added).  "A federal complainant cannot circumvent this jurisdictional limitation by asserting claims not raised in the state court proceedings or claims framed as original claims for relief.  If the district court is confronted with issues that are inextricably intertwined with a state judgment, the court is in essence being called upon to review the state-court decision, and the originality of the district court's jurisdiction precludes such a review."  United States v. Shepherd, 23 F.3d 923 (5th Cir. 1994).

    Regardless of how the plaintiff couches his claim, he is effectively requesting that this Court review the decision of the state court that dismissed his demand for return of his seized property as untimely.  He

cannot circumvent this rule by casting his claim in the form of a civil rights action. Liedtke v. State Bar of Texas, supra. Although the decision of the state court may have been erroneous, the plaintiff's sole recourse was through the Louisiana appellate courts and thereafter in the United States Supreme Court. This Court, therefore, does not have jurisdiction to entertain his § 1983 lawsuit for monetary damages resulting from the defendants' alleged wrongful conduct in failing to return the subject property. See Wheeler v. Melanson, 2008 WL 2874718 (W.D. La., July 2, 2008) (holding that a § 1983 lawsuit for failure to return vehicles seized during arrest was barred by the Rooker-Feldman doctrine where issues were "inextricably intertwined" with state forfeiture proceedings).

Further, even were the Court to conclude that review of the plaintiff's claim is not barred by the Rooker-Feldman Doctrine, the Court would nonetheless find that the plaintiff's claim is foreclosed by application of the Parratt-Hudson doctrine. Under this doctrine, a claim for the random and unauthorized deprivation of personal property by state officials is not cognizable in federal court so long as an adequate post-deprivation remedy is provided by state law. Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Even in instances where the deprivation is intentional, the Due Process Clause of the Fourteenth Amendment is not implicated where an adequate post-deprivation remedy exists. Hudson, supra. The Parratt-Hudson doctrine rests on the premise that because the state is unable to predict the random and unauthorized conduct before it occurs, a pre-deprivation remedy is not feasible, and in that instance, an adequate post-deprivation remedy provides all the process that is due to a claimant. Id.

In the instant case, the plaintiff's claim implicates the Due Process Clause of the Fourteenth Amendment, which provides that "nor shall any State deprive any person of life, liberty, or property, without due process of law."  Accepting the plaintiff's allegations as true, it appears to this Court that a random and unauthorized deprivation did in fact occur, not when officials initially seized his property pursuant to presumably valid warrants, but when officials retained the plaintiff's seized property and neither returned it to him nor disposed of it in accordance with the statutory procedures set forth in La. R.S. 15:41.  This conclusion inescapably results from the statutory provisions which envision that property seized in connection with a search warrant shall be "retained under the direction of the judge" and, when it is no longer needed as evidence, "shall be disposed of according to law, under the direction of the judge."  La. Code Crim. P. art. 167.  Because the state court judge alone is vested with authority to dispose of the property, the State has not apparently delegated to the defendant sheriffs, police chiefs, district attorneys or clerks of court any unilateral power or discretion to dispose of the plaintiff's property.  Cf., Zinermon v. Burch, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (holding that the Parratt-Hudson doctrine does not apply where the defendants have been delegated the power and authority to effect the very deprivation complained of, as well as the duty to initiate available procedural safeguards); Alexander v. Eiyoub, 62 F.3d 709 (5th Cir. 1995) ("[S]tate officials could not characterize their conduct as random and unauthorized if the state had 'delegated to them the power and authority to effect the very deprivation complained of.'").  See also State v. Authement, 532 So.2d 869 (La. App. 1st Cir. 1988) (noting that La. R.S. 15:41 and Code Crim. P. art. 167 impose no affirmative duties or obligations upon the sheriff and chief of police relative to seized property but only impose obligations on the state court judge and clerk of court – the latter

being empowered only to hold a contradictory hearing with persons claiming to be the owners of seized property). The defendants, therefore, had no authority in fact under state law to unilaterally convert the property to any use adverse to the plaintiff's ownership interest absent some action by the trial judge, which action has never apparently occurred. See Brown v. Neustrom, 916 So.2d 395 (La. App. 3rd Cir. 2005) (recognizing that the state procedure for disposal of property seized incident to an arrest requires that the court issue an order and, thus, "[t]he Sheriff's Office defense that the District Attorney's Office authorized the disposal ... cannot hold up ....").

Further, the random nature of the defendants' conduct is apparent because, as in Parratt and Hudson, there is and was no way in which to predict when the defendants' wrongful conversion of the plaintiff's property would take place, or indeed did take place in the instant case, so as to allow for adequate pre-deprivation safeguards. See Zinermon v. Burch, supra (finding the Parratt-Hudson doctrine to be inapplicable, in part, because the time of deprivation could be anticipated with reasonable precision so as to allow for adequate pre-deprivation safeguards). In the instant case, to the contrary, the pertinent statutes envision that seized property will be held and safeguarded pursuant to the valid search warrant(s) and in furtherance of ongoing or anticipated criminal proceedings, and will not be held adverse to the owner's interest. And such non-adverse possession can indeed last for a long time, even years, given that the State is entitled to retain the property until all delays for appeal, post-conviction and habeas review have elapsed, and the property is no longer needed for any potential retrial upon reversal or remand. See State v. Feeback, 434 So.2d 466 (La. App. 2nd Cir. 1983). The owner of the property, in fact, is entitled to return to the state court many years after the seizure and request return of his property, so long as the trial judge has taken no action

to dispose of it.  See, e.g., Owens v. Book, 809 So.2d 1217 (La. App. 3rd Cir. 2002) (motion for return of property filed 10 years after seizure). And this is true even where the owner has never been prosecuted or convicted of any offense.  Owens v. Book, supra; Taiae v. City of Baton Rouge, supra.  Accordingly, it is not to be anticipated that government officials have taken or will take adverse possession of the subject property, nor is it to be anticipated when they might do so.  And finally, if the judge determines to dispose of the seized property, procedural protections are routinely provided because the judge will, in most instances, direct that a public sale or auction be conducted, La. R.S. 15:41(2)(a), which procedures include procedural protections in the form of publication and notice.  See, e.g., La. Code Crim. P. art. 228.3 (providing for judicial review, publication and notice when sheriff seeks to dispose of property seized in connection with a criminal investigation).

   Having found that the Parratt-Hudson doctrine applies to the plaintiff claims asserted herein, because the deprivation was both unauthorized and random, the Court is next called upon to determine whether an adequate post-deprivation remedy is provided under Louisiana law.  In this regard, the plaintiff strenuously argues that, because the proceeding which he filed in state court for the return of his property was dismissed as untimely, he has not been provided with an adequate post-deprivation remedy.  This argument is unavailing.  As discussed above, the courts in Louisiana have recognized both a proceeding under La. R.S. 15:41 for return of property seized pursuant to a search warrant as well as an action for wrongful conversion of the property under Civil Code article 2315.  Specifically, actions in which the Louisiana state courts have recognized the right of plaintiffs to seek return of their seized property and/or damages in state court include Taiae v. City of Baton Rouge, supra; Brown v. Neustrom, supra; State v. Baynes, supra; and

State v. Lamb, 645 So.2d 791 (La. App. 2nd Cir. 1994), overruled on other grounds, In re Matter Under Investigation, supra.  Although the plaintiff asserts that the denial of his claim in state court effectively resulted in the denial of a post-deprivation remedy, he is confusing the existence of the remedy with a successful pursuit thereof.  Merely because a claimant is unsuccessful in prosecuting a claim in state court does not render the remedy itself inadequate.  See Agim v. Lumpkin, 35 Fed.Appx. 389 (5th Cir. 2002) ("A state post-deprivation remedy is not inadequate simply because the state court determines that a prisoner has forfeited his rights to seek recovery under state procedural laws.").  See also Gardner v. Hudson, 2010 WL 446562 (E.D. Tex., Feb. 2, 2010) ("[A]n inmates' lack of success in the pursuit of state remedies does not render such remedies inadequate."); Griffin v. Reed, 2006 WL 3715778 (E.D. La., Dec. 12, 2006) (dismissing plaintiff's § 1983 lawsuit for wrongful retention of property seized during arrest, notwithstanding that the plaintiff's prior state court lawsuit for return of the property was dismissed as untimely).  See also Robinson v. Winslow, 88 Fed.Appx. 93 (7th Cir. 2003) (holding that the prior dismissal of the plaintiff's state court lawsuit as untimely "does not establish that the [remedy] is inadequate to protect his right to due process.")  In  Robinson v. Winslow, supra, the court also applied the Rooker-Feldman doctrine to conclude that, if the plaintiff believed that the state court's dismissal as untimely was improper, "the only federal venue in which he could contest these state court decisions is the United States Supreme Court." Although the plaintiff in this case obviously believes that the state court decisions which denied him the return of his seized property were incorrect, the post-deprivation remedies were nonetheless available and adequate, and his remedy was to seek a writ of certiorari in the United States Supreme Court.  For this reason, his lawsuit in this Court is subject to dismissal.

RECOMMENDATION

It is recommended that the defendants' Motions to Dismiss, rec.doc.nos. 25, 26, 27 and 29, be granted, and that the plaintiff's action be dismissed, with prejudice, for failure to state a claim upon which relief may be granted.

Signed in chambers in Baton Rouge, Louisiana, August 10, 2010.

**MAGISTRATE JUDGE CHRISTINE NOLAND**